UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
MARK VAUGHN,
         Plaintiff,

   -against-

PHOENIX HOUSE PROGRAMS OF NEW YORK INC.,
TERRANCE WARING, ARTHUR WALLACE,
WILLIAM BROWN, BRENDON L. HOFFMAN,
THOMAS JASPER, DENISE BUCKLEY,
HERMAN LAZADA,
         defendant's.   -_

**AMENDED COMPLAINT**
under the Civil Rights Act,
42 U.S.C. § 1983

Jury Trial is Requested.

14-civ-3918(LAP)

I.    Parties in this complaint:

A.

Plaintiff    Mark Vaughn
             14 R 0074
             Watertown Correctional Facility
             P.O. BOX 168
             Watertown New York 13601-0168


SEP 10 2014
PRO SE OFFICE

B.

Defendant No. 1  Brendon L. Hoffman
                President of Phoenix House Programs of New York,
                164 W. 74th St.
                New York, NY. 10023-2301

Defendant No. 2  Thomas Jasper
                Chairman of Phoenix House Programs of New York,
                164 W. 74th St.
                New York, NY. 10023-2301

Defendant No. 3  Terrance Waring
                House Manager of Phoenix House Long Island City Campus,
                34-25 Vernon Boulevard
                Long Island City, NY 11106

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9-10-14

Defendant No. 4   Arthur Wallace
                  Substance Abuse Counselor, Phoenix House, L.I.C.
                  34-25 Vernon Boulevard
                  Long Island City, NY 11106

Defendant No 5    William Brown
                  Substance Abuse Counselor, Phoenix House,
                  Career Academy, 50 Jay Street, Brooklyn, NY 11201

Defendant No. 6   Denise Buckley
                  Managing Director, Phoenix House L.I.C.
                  34-25 Vernon Boulevard
                  Long Island City, NY 11106

Defendant No. 7   Herman Lazada
                  Managing Director, Phoenix House Career Academy
                  50 Jay Street
                  Brooklyn NY, 11201

II.               The following is the statement of claim and the facts.

## A LITTLE ABOUT THE TWO PHOENIX HOUSES I WAS IN
## AND THE LABOR I WAS REQUIRED TO DO.

Phoenix House Long Island City ( hereafter referred to as L.I.C.) is a five story building located in Long Island City Queens New York. The facility houses approximately 175 males and 75 females. The facility has an operating certificate for the treatment of alcohol and substance abuse. The fifth and fourth floors and half of the third is for male residents, the second and other half of the third, are for females.

There are two male point person's stationed on the male floors 24 hours a day 7 days a week, one male resident is stationed in the basement likewise.

Across from the main building is the F.S.S. building ( I do not remember what the initials F.S.S. stands for) this building is used for the medical and dental clinics, some speciality groups are also held there. Two point person's are required to be in this building from about 7am-3pm. Resident's also work in the medical and dental clinics.

## THE 50 JAY STREET FACILITY

Phoenix House 50 Jay Street is a six story building located in D.U.M.B.O., Brooklyn, New York, that houses about 235 residents, when I first arrived there it was a coed facility, but now only houses males.

50 Jay Street also has a certification for the treatment of alcohol and substance abuse services and in addition, has vocational trades on site. One male resident sits on a point on each floor 24/7, including the basement. Mr Herman Lazada was the Mamaging director while I was a resident there.

### DISCRIPTION OF THE JOB FUNCTIONS/LABOR I WAS REQUIRED TO DO.

POINT PERSON OR POINT COVERAGE: Every floor in either building is required to be manned 24/7 by a point person doing point coverage. A point person sits at a desk by an intercom and gets information from the front desk that he in turn relays to the residents on his floor, he's also required to make entries on a point sheet, these entries may include, when staff members enter or exit his floor and or their offices,when meals are called, when groups are called etc.he's also required to enter the times these things took place and put his initials after every entry.

The point person is also required to knock on the doors and then enter every room on his floor to announce to the otherresident's when clinical/theraputic functions are called, at wake-up time, lights out times, meal times and for any other reasons. He's also responsible for clearing his floor during fire drills.

The point person is not allowed to leave his point for any personal reasons, when and or if he has to use the bathroom he must first call down to the front desk and let them know he must use the bathroom and the wait until they can find someone to cover his point while he uses the bathroom. At meal times, the point person is required to eat as quickly as possible and return back to his point. The point person is also required to notify the front desk if anything goes wrong on his floor and if the other resident's do not respond to clinical/theraputic functions when announced, he's required to take their name and room number and notify staff. Point coverage hours, in both facilities, were from, 7am - 3pm, 3pm - 11pm and 11pm - 7am.

OVERNIGHT COORDINATOR: As overnight coordinator I worked from 10:30 pm until 6:30 am, I sat at the front desk with a staff member and relayed to the point person's what the staff told me to tell them, like at bed time the staff member told me call off the floor, and using the intercom I called each floor and told them to announe off the floor, I also did this for morning wake up, meals, medication etc.. I was also required to have coffee and a snack made and ready for the point people, I was also required to keep a point sheet like the point person, I was responsible for counts of the male resident's, about three counts were required every night. I was also required to make rounds of the male floors at least twice a night. Resident's

whom exit the facility are required to have destination cards, when a resident exited or entered the building I was required to pull that persons destination card and make an entry of what time that person entered or exited the building, I was also required to make sure that any persons destination card was current and properly signed and filled out by the appropiate staff.

GARBAGE ROOM: I worked the garbage room from 7am - 3pm, my duties were to collect the trash from the floors and bring it down to the basement, once in the basement I was required to take the trash out back to the garbage room and put it in bins, I was also required to seperate the recycleables and put place glass and plastic in their respective bags, I was also required to break up and bind the cardboard boxes with twine. I was required to clean the garbage room and bins daily, I was also required to remove the trash from the bins and have it set out for sanitation on pick-up days, I was required to keep the trash room and the small parking lot behind the facility were the trash room is located cleaned daily or as needed.

WAREHOUSE: I worked the warehouse from 7am - 3pm, every morning when I arrived to work I was required to take a hand-truck approximately 3 blocks to pick up baked goods, once I got back with the baked goods I was given a type of order form, the order form was for different Phoenix Houses throughout the city, the order form was request for different items of foods and beverages. I pulled the cases of the items requested from shelves according to the order form and loaded

the cases onto pallets, I then placed a destination and location sheet on the boxes and plastic wrapped the pallet. when all orders were filled I loaded them into a truck using a hand jack, I also unloaded full trucks and shelved the boxes, I was required to place numbered stickers onto all of the cases that came into the warehouse.

### STATEMENT OF FACTS:

On July 28th, 2009, I was mandated by the Kings County Supreme Court to Phoenix House as an alternative to incarcaration the mandate was to be from 18 - 24 months inpatient. The mandate was under T.A.S.C. ( treatment alternatives to street crime ) D.T.A.P. ( drug treatment alternatives to prison ), following successful completion of the inpatient portion of the mandate, I was also required to work on the books and attend outpatient services for six months and then the charges against me would be dismissed. If I violated the terms of the agreement set by the court I could be sentenced to the prison term agreed on by myself and the court.

On July 28th, 2009, I entered into Phoenix House L.I.C., resident's whom first enter into L.I.C. are required to attend a 30 day orientation, during the orientation phase resident's are only required to work 8 hours on Saturday and 8 hours on Sunday. When I arrived at L.I.C. Mr Jose Rosario was the managing director of the program, he left not soon after and Ms. Denise Buckley became the managing director.

Mr. Terrance Waring was the house manager and my substance abuse counselor was Ms. Sylvia Cahill.

While in orientation I learned from other resident's that following orientation I would be required to work 8 hour work shifts 6 days a week, I became concerned and spoke to Ms. Cahill about it, I told her that I was not in Phoenix House as a laborer and I was not going to work for no pay, she reminded me of my mandate and said that the labor was a part of the program.

Sometime later I was in house meeting ( house meeting is when all the resident's in the facility sit in the diningroom and discuss the things that are happenning in and around the facility like who will be assaigned to what job, who was granted or denied inhouse and outhouse passes, etc.) Mr. waring called my name along with someothers and told us all to stand, once we were all standing he said, you're all going from orientation to kitchen, I refused, and stated that I was not there as a laborer and that I was not going to work in the kitchen, Mr. Waring stated You're disrupting my meeting, go take a stand, ( taking a stand means that you must leave the meeting and go stand in the lobby at by the front desk until a staff member comes and speaks to you.)

After the meeting Mr. Waring comes out and calls me into his office, he asks me was I mandated and I says yes, he then asks by who, and I tell him Brooklyn T.A.S.C., he then told me that I could not refuse a job function and that it was a part of the rules and regulations of the program, he said that I could not remain in Phoenix House if I refused to work and that I could go upstairs and pack my things and that he would have a metro card

8

ready for me when I came back down with my property. Being kicked out of the program means that im going to jail, no ifs, ands, or buts about it, remaining in the program and or not getting kicked out is one of the agreement terms, like remaining clean and sober so I agree to work so I don't get kicked out the program and sent to jail, after I agree to work Mr. Waring states, matter of fact, I don't want you in my kitchen, you're going to the basement point, so that's what I did. A week or so later I wrote a letter to O.A.S.A.S. ( Office of Alcohol and Substance Abuse Services) patient advocacy, I do not remember the entire reply, but the reply ended with the person stating, I suggest that you do the job function.

After a month or so of working the basement point I was moved to the garbage room. I worked those two jobs from August 2009, until November 2009.

In November 2009, I was sent from L.I.C. to 50 Jay Street to attend a class in basic carpentry. Since I had come from the L.I.C. location I was not required to do any orientation or anything like that and about 2 days after arriving in Jay St. I was assigned to basement point, Mr. William Brown became my substance abuse counselor while at 50 Jay St.

In December 2010, I began carpentry classes from 9am - 2:30pm, I was no longer working overnight basement but working various points throughout the building from 3pm - 11pm. I was exhausted,

9

so sometime in mid January I refused to work again. I would usually shower after class and report to my job function, but the day I refused I went from class to the shower to bed, Since I didn't showup for work by about 3:30 the guy working the point that I was to relieve got angry and began calling around the building for me, ( he couldn't leave the point until I showed up to relieve him ) they found me in the bed sleep, when the guy woke me up and said I had point coverage I told him I was not doing it, I refused, so he reported it to someone who reported it to my counselor Mr. Brown, Mr. Brown calls down and tells the point person to have me report to his office.

When I reported to his office he began by telling me that I was not no one to be telling them what I was and was not going to do, he said that I did not make the rules and regulations of the program that I followed them, he said that I either complied or go to jail it made him no difference. I tried to explain to him that I was doing a little to much, I was tired, he said, well don't work then and go ahead to jail and you could sleep all you want.

I go back downstairs and I work the point for a few hours and then I abandoned it, I go to the room and go to sleep, I do this for a few days and the staff become furious.

leaving the point unattended is like a mortal sin, if the staff call upstairs for someone or something and no ones at the point then they can't get whom or what they want, so oneday they tell me, if you vacate the point again you'll be discharged from the program, I don't do it anymore but I start refusing to do the weekend point I only worked Monday to Friday so they had an intervention with Mr. Henry Algarin of the Brooklyn T.A.S.C. office, ( an intervention is utilized to try to get a person to respond before kicking him out the program ) ( the intervention was arraigned by Mr. Brown ) at the intervention Mr. algarin gave me the work or go to jail speech and told me I should just do what I needed to do to finish the program and go home, also in a letter to the judge dated February 3, 2010, Mr. Brown makes mention to my job function issues to which the judge states that I was to correct this problem, so I went back and I worked all points on all shifts they gave me from November 2009, until October 2010.

In October 2010, I completed the inpatient portion of the mandate and was allowed to return home, there were stipulations that I was required to abide by but I didn't, so on February 24, 2011, Judge Gubbay again sent me to Phoenix House, this time the mandate was for six months minimum.

I again enter Phoenix House L.I.C., my substance abuse counselor this time is Arthur Wallace, I again go through orientation and afterward, I again refuse to work. There's another intervention with Henry algarin and im again told either work or go to jail, I still refuse, so in a court letter dated April 12, 2011, Mr. Wallace reports to the judge that im refusing to perform a job function. The judge reads the letter and states that if im kicked out of the program that im going to jail, so I go back and work, I again write to the department of Labor and in their reply dated May 23, 2011, they state that they have no authority over such programs so I work various points throughout the building. I also work the warehouse and as the overnight coordinator, I do these jobs in various months that I cannot seperately recall from April 2011, until November 2012.

When a person wants to go home to visit their family or to have their family come to visit them they fill out what is called a request form, during those times that I refused to work all my requests were denied, the reason given was refusal to do a job function. I was also not allowed to go out on various trips and outings with the other resident's and the reasons given were refusal to do a job function.

When the six months were up I went to court expecting to go home, but the judge refused to release me stating that the issues with the job function as a reason.

A person in a residential treatment facility has a right to be free from performing labor that does not benefit them, I in no way benefitted from the labor I did at Phoenix House, in fact, only Phoenix House benefitted from my labor and the labor of the other patients by not hiring the appropiate staff and using us as unpaid laborers thay were able to save a fortune in what would have been employee salaries.

There was no Clinical/Theraputic value to any of the work I was made to do. The reason a person, ( especially myself ) enters a residential drug treatment facility is for the treatment of alcohol and substance abuse services, not to obtain work experience or a work history. The only kind of allowable work that a patient performs in such a facility is the work that is documented in the patient's case record as being relevant or beneficial to that person's treatment and or recovery.

In Phoenix House, I was not even allowed to participate in Clinical/Theraputic functions during work hours or while performing a job function, the job function superseeded any Clinical/Theraputic functions.

Wnen I was the overnight coordinator I was given what is called an off the floor pass, what this is is a slip of paper filled out by a staff member that I hung on the door of the room letting the point person on duty know that I was allowed to stay in bed and sleep because I had worked the overnight shift.

13

As overnight coordinator I went to sleep after breakfast and was not required to be at any Clinical/Theraputic functions until 5:00 pm, for house meeting, I was only required to stay at the house meeting for either a half hour or a hour, I forget which, then I was to go back to my room and prepare for my shift.

O.A.S.A.S. requires that every patient receive at a minimum, 40 or 48 hours of Clinical/Theraputic treatment a week, I maybe received 5 hours a week.

The fact that I was mandated by the court to an inpatient treatment facility in no way means that the rights and guarantees that I have as a citizen of this country or the State of New York can be ignored or infringed upon.

Phoenix House does not have the right to make unpaid laborers out of their patients, they do not even have the right to make paid laborers out of their patient's.

Phoenix House required me to perform labor that I had a right not to be made to perform, they used the court system, to aid them in their illegal exploitation of me and my rights, since the labor I performed was not of any benefit to me, but Phoenix House alone, I should have been compensated according to City, State and federal laws.

Phoenix House also wrongfully charged me labor as an admissions fee.

Prior to gaining admission into Phoenix House, a person must go through the admission/intake process, during that process a person must sign some kind of a work agreement or you cannot enter into the program. The agreement is in direct conflict with the rights of a patient and also is not a allowable nor legal part of the admissions criteria according to O.A.S.A.S. and the Department of Mental Hygiene.

The defendant's, by the conduct stated herein, violated my rights under 42 U.S.C.A §1981, 29 U.S.C.A. 206, 29 U.S.C.A. §207, TITLE 19 NEW YORK STATE LABOR LAW, 28 U.S.C.A. §203, U.S.C.A. CONST. AMEND 13, TITLE 14 NYCRR CHAPTER XXI, PARTS 815, 800, 818, 810, 1034, MENTAL HYGIENE LAW 19.05(F), 19.07(e) 19.09(b), 32.01 32.07(a) and the 5th and 14th ADMENDMENTS to THE UNITED STATES CONSTITUTION

III. Relief:

plaintiff is seeking $49,112 in compensatory damages for the work performed, liquidated damages and interest, all costs and fees and $3,540,000 in punitive damages.

IV. PREVIOUS Lawsuits:

There were no other lawsuits dealing with these same facts filed in any other court.

I declare under penalty of perjury that the foregoing is true and correct.

signed this 2nd day of September, 2014.

*Mark Vaughn*
14 R0074
Watertown Corr. Fac
P.O. Box 168
Watertown, NY 13601-0168

I declare under penalty of perjury that on this 2nd day of September, 2014, I am delivering this complaint to prison authorities to be mailed to the Pro Se office of the United States District Court for the Southern District on New York.

*Mark Vaughn*

16

