UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**USDC-SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
**DOC#:**
**DATE FILED:** 8/9/2016

---

MARK VAUGHN,

             Plaintiff,

       v.

PHOENIX HOUSE PROGRAMS OF NEW
YORK, ARTHUR WALLACE, BRENDAN
L. HOFFMAN, THOMAS JASPER, DENISE
BUCKLEY, and HOWARD MEITINER,

             Defendants.

No. 14-CV-3918 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

*Pro se* Plaintiff Mark Vaughn sought in-patient substance abuse treatment at Phoenix

Houses of New York, Inc. ("Phoenix House") pursuant to a diversion program run by the Kings

County Supreme Court. He asserts that, as part of that program, he was forced to work without

pay, which purportedly violated his rights under the Thirteenth Amendment, the Fourteenth

Amendment, the federal anti-peonage statute, the Fair Labor Standards Act ("FLSA"), and various

New York State and City laws. In a previous opinion, the Court granted Defendants' motion to

dismiss Vaughn's First Amended Complaint for failure to state a claim. Vaughn then filed his

Second Amended Complaint, after which Defendants again moved for dismissal. Those motions

are now granted with prejudice. The relevant facts were set out in the Court's prior opinion and

are included below only as necessary to evaluate the instant motions to dismiss.

## BACKGROUND

In its prior opinion, the Court held that Vaughn's First Amended Complaint had failed to

state claims under 42 U.S.C. § 1983 and the Fair Labor Standards Act, the only federal claims pled

in the Amended Complaint. Because all of Vaughn's federal claims were dismissed, and because there were "no unusual circumstances warranting the continued exercise of supplemental jurisdiction over [Vaughn]'s claims under state and city law," the Court dismissed the First Amended Complaint in its entirety. *Vaughn v. Phoenix House Programs of New York*, No. 14-CV-3918 (RA), 2015 WL 5671902, at \*9 (S.D.N.Y. Sept. 25, 2015).

Vaughn then filed his Second Amended Complaint ("SAC"), in which he added additional claims and a new Defendant, Howard Meitiner, the former Chief Executive Officer of Phoenix House's parent organization. Dkt. 53; *see also* Mem. of Howard Meitiner, at 2. Defendants Phoenix House, Denise Buckley, Arthur Wallace, Thomas Jasper, and Brendan Hoffman moved to dismiss the SAC on November 13, 2015. On March 2, 2016, Meitiner also moved to dismiss. Vaughn did not file papers opposing those motions within the mandated deadlines. On April 11, 2016, the Court directed Vaughn to inform it whether he intended to file any opposition papers, noting that it had the authority to consider the merits of the motions, even if they remained unopposed. Dkt. 70.

After Vaughn initially advised the Court on April 29, 2016 that he would not file any moving papers, Dkt. 71, he sent another letter dated May 11, 2016 in which he indicated that he had not received copies of the motions to dismiss following his release from prison and was unable to respond previously for that reason. Dkt. 72. The Court therefore ordered Defendants to again serve Vaughn with both motions to dismiss with their supporting memoranda and extended Vaughn's deadline to respond. *Id.* Defendants informed the Court that the United States Postal Service reported delivery of the moving papers on June 2, 2016. Dkt. 75.

On June 23, 2016, the Court received a final letter from Vaughn. *See* Dkt. 76. He asserted that Defendants' moving papers were delivered on June 4, 2016 but that he was unable to review

them because of a new arrest. *Id.* He thereafter "ask[ed] that [the Court] go ahead and make your decision, I will not answer Phoenix House's motions." *Id.*

## LEGAL STANDARD

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Hogan v. Fischer*, 738 F.3d 509, 514 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim has facial plausibility "'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). "'Where, as here, the complaint was filed *pro se*, it must be construed liberally to raise the strongest arguments it suggests.'" *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013)). In deciding a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "'the duty of a court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Hogan*, 738 F.3d at 514 (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010)).

## DISCUSSION

Defendants argue that the Court should dismiss Vaughn's federal claims and decline to exercise its supplemental jurisdiction over the remaining state and city ones, as it did in its earlier ruling. Defendants further contend that the Court should dismiss the suit with prejudice, given that Vaughn has already amended his complaint twice and any further amendment would be futile. The Court agrees and dismisses the SAC with prejudice.

## I.    Vaughn's Federal Claims

In the SAC, Vaughn contends that Phoenix House "does not have the legal right to implement a 'work or get out policy.'" SAC at 18. His work at Phoenix House, which included trash collection, warehouse labor, and "point person" duty in which he would relay information from the front desk to residents, was not voluntary, he alleges, because if he refused to comply with the program's demands, he would be sent to jail for his underlying case. *Id.* at 4–7. In other words, Vaughn asserts, Phoenix House has no authority "to compel that its patients work 48 hours a week and not only not pay them for their labor, but deny them the very treatment that they're there for in so doing." *Id.* Based on these allegations, Vaughn claims that Phoenix House's work policy violated his rights guaranteed by the Thirteenth and Fourteenth Amendments, the federal anti-peonage statute, and the FLSA. *Id.* at 18, 20. For substantially the same reasons given in the Court's previous order of dismissal, Vaughn's federal claims are dismissed. *See Vaughn*, 2015 WL 5671902, at *4–9.

### A.    Section 1983

Vaughn invokes 42 U.S.C. § 1983 to redress the purported violations of his Thirteenth and Fourteenth Amendment rights. SAC at 18. His § 1983 claim must fail, though, because the SAC does not plausibly allege a violation of his constitutional rights.[1]

### 1.    Thirteenth Amendment

The Thirteenth Amendment outlaws slavery and involuntary servitude. U.S. Const. amend. XII. The latter is a condition "'in which the victim is forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or

---

[1] Plaintiff devotes a portion of the SAC to describing why "Phoenix House engaged in joint activity with the Court" and thus, in his view, is a state actor. SAC 18–19. As the Court held in its earlier opinion, however, "even if the state action requirement were satisfied, Plaintiff's § 1983 claims fail because the facts alleged do not establish a constitutional violation under the Thirteenth, Fourteenth, or Fifth Amendments." *Vaughn*, 2015 WL 5671902, at *6.

the legal process.'" *McGarry v. Pallito*, 687 F.3d 505, 511 (2d Cir. 2012) (quoting *United States v. Kozminski*, 487 U.S. 931, 952 (1988)). As is relevant here, the "Amendment does not bar labor that an individual may, at least in some sense, choose not to perform, even where the consequences of that choice are exceedingly bad." *Immediato v. Rye Neck Sch. Dist.*, 73 F.3d 454, 459 (2d Cir. 1996) (internal quotation marks and citation omitted); *see also Calicchio v. Sachem Cent. Sch. Dist.*, No. 14-CV-5958 (DRH), 2016 WL 2599121, at 4–5 (E.D.N.Y. May 5, 2016) (finding no legal coercion where plaintiff was threatened with expulsion or arrest by the FBI if he did not perform uncompensated work while at school).

Vaughn's claim of involuntary servitude fails because Vaughn's own allegations make clear that he was not forced to participate in the diversion program at Phoenix House.[2] When Vaughn refused to work on multiple occasions, Phoenix House staff and officials from the T.A.S.C. program informed him that he could leave Phoenix House if he so desired. *See* SAC at 8, 10–11, ("[The house manager] said that I could not remain in Phoenix House if I refused work for them and that if I did not work that I could go upstairs and pack my things and that he would have a metro card ready for me when I returned with my property."). As this Court previously ruled, "although Plaintiff participated in the T.A.S.C./D.T.A.P. program to avoid potential prison time, his participation was nevertheless voluntary and not barred by the Thirteenth Amendment." *Vaughn*, 2015 WL 5671902, at *6; *see also Harris v. Westbrooks*, No. 07-CV-00018, 2007 WL 1047594, at *1, 3 (M.D. Tenn. Apr. 4, 2007) (holding that participation in "work detail" of a "Parole Technical Violator Diversion Program" did "not constitute 'involuntary servitude' prohibited by the Thirteenth Amendment").

---

[2] As the Court previously noted, "[t]o the extent that Plaintiff pled guilty as part of his T.A.S.C./D.T.A.P. agreement prior to his inpatient treatment at Phoenix House, he is barred as a matter of law from asserting a Thirteenth Amendment Claim." *Vaughn*, 2015 WL 5671902, at *6 (citing U.S. Const. amend. XIII) (amendment does not apply to "punishment for crime whereof the party shall have been duly convicted")).

## 2. Fourteenth Amendment

Vaughn also asserts that Defendants violated his rights guaranteed by the Fourteenth Amendment. His arguments fail, however, because Vaughn has not plausibly alleged that he was deprived of a protected liberty or property interest. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999) ("The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'").

Vaughn first alleges that Phoenix House's failure to compensate him for his labor amounted to a violation of a property interest. *See* SAC at 20 ("I had a right to [be] compensated for the labor I was made to perform, and since I was not, I was denied that property interest in violation of my right under the 14th Amendment."). When alleging such a violation, however, a plaintiff must first "demonstrate that state law confers 'a legitimate claim of entitlement'" with which Defendants interfered. *Velez v. Levy*, 401 F.3d 75, 85 (2d Cir. 2005) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). "While property interests are constitutionally protected, they are not generally constitutionally established; rather, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Id.* (quoting *Roth*, 408 U.S. at 577) (emphasis omitted). Vaughn asserts that the New York Mental Hygiene Law "states that I had a right not to perform labor that did not benefit me," SAC at 31, but he does not cite any provision that establishes a property right in labor performed pursuant to a court-sponsored diversion program. Nor is this Court aware of any state law—including the Mental Hygiene Law—that suggests he possesses such a property right.[3] The

---

[3] Indeed, "'[n]o private cause of action is authorized for violations of the Mental Hygiene Law.'" *Lombardo v. Stone*, No. 99-CV-4603 (SAS), 2001 WL 940559, at *5 (S.D.N.Y. Aug. 20, 2001) (quoting *McWilliams v. Catholic Diocese of Rochester*, 145 A.D.2d 904 (N.Y. App. Div. 1988)).

Court thus finds that Phoenix House did not deprive Vaughn of any property interest in being compensated for his work performed as part of a drug treatment program.

Vaughn's alternate Fourteenth Amendment theory is similarly without merit. He argues that "a right to treatment is constitutionally mandated" when a diversion program exists for the "primary goal" of providing "treatment of [criminal defendants'] addictions." SAC at 20. According to the SAC, Phoenix House violated this right when it provided Vaughn with only "4 or 5 hours a week of clinical/therapeutic treatment" instead of the required "minimum of forty hours per week." *Id.* As the Court previously held, however, "there is no legal authority for [the] claim" that Vaughn held a "constitutional right to drug treatment, or to a specific type of drug treatment." *Vaughn*, 2015 WL 5671902, at *7 (collecting cases).

Given that Vaughn has not plausibly pled a violation of any right or interest protected by the Fourteenth Amendment, this claim must be dismissed.

## B.    Anti-Peonage Statute

In the SAC, Vaughn also alleges for the first time that Defendants violated the federal anti-peonage statute, which outlaws debt bondage. That law provides:

> The holding of any person to service or labor under the system
> known as peonage is abolished and forever prohibited in any
> Territory or State of the United States; and all acts, laws, resolutions,
> orders, regulations, or usages of any Territory or State, which have
> heretofore established, maintained, or enforced, or by virtue of
> which any attempt shall hereafter be made to establish, maintain, or
> enforce, directly or indirectly, the voluntary or involuntary service
> or labor of any persons as peons, in liquidation of any debt or
> obligation, or otherwise, are declared null and void.

42 U.S.C. § 1994. In order to "state a claim under § 1994, a plaintiff must allege that he is [1] being forced to perform some compulsory service [2] in order to pay a debt." *Rosquist v. N.Y.*

*Univ. Med. Cent.*, No. 97-CV-8566 (JGK), 1998 WL 702295, at \*9 (S.D.N.Y. Oct. 7, 1998, *aff'd*, 199 F.3d 1323 (2d Cir. 1999).

Vaughn has failed to allege facts that satisfy either element. As explained above, the allegations themselves establish that his work at Phoenix House was voluntary as opposed to "compulsory service," as the statute requires. *Rosquist*, 1998 WL 702295, at \*9. Indeed, at least one court has determined that a "finding that plaintiffs fail to state a claim for involuntary servitude [under the Thirteenth Amendment] compels the conclusion that their claims under . . . [the Ant-Peonage Statute,] 42 U.S.C. § 1994 are similarly insufficient." *Winthal v. Mendez*, No. 76-CV-3161, 1978 WL 14035, at \*4 (S.D.N.Y. Apr. 18, 1978). Furthermore, Vaughn cannot meet the second—debt—element because his pleading confirms that he "owed [Phoenix House] nothing in the way of finances or payment," SAC ¶ 22, much less that his ability to leave the facility was contingent upon his payment of any such debt. *See Taylor v. Georgia*, 315 U.S. 25, 29 (1942) (noting that peonage exists when a person who "is unable to repay [a debt] is bound by the threat of penal sanction to remain at his employment until the debt has been discharged"); *Rosquist*, 1998 WL 702295, at \*9 ("The plaintiff has not alleged that he owes a debt to [defendants], or that he was compelled to work to pay off such a debt. Thus his claims under § 1994 are dismissed."). Vaughn fails to state a claim under the anti-peonage act.

## C. FLSA

Lastly, Vaughn attempts to replead his claims under the FLSA, which the Court previously rejected on the ground that Vaughn did not qualify as an "employee" protected by that statute. *See Vaughn*, 2015 WL 5671902, at \*7–9. Vaughn first cites 29 U.S.C. §§ 203(e), 203(g), and 203(d), which define, respectively, "employee," "employ," and "employer," for the purposes of the FLSA. He refers as well to 29 U.S.C. § 203(r)(2)(A), which defines when activities at, *inter alia*, hospitals,

mental institutions, and schools qualify as "enterprises" within the terms of the FLSA. The SAC then alleges, in conclusory fashion, that based upon those definitions he "clearly qualif[ies] as a covered employee." SAC at 28. For the reasons stated in its prior opinion, however, the Court remains convinced that, based upon the "economic realities" of Vaughn's work at Phoenix House, he has not plausibly alleged that he was an employee for the purposes of the FLSA. Even if, as Vaughn alleges, his work at Phoenix House "was not apart [sic] of [his] treatment plan or [his] treatment goals," SAC at 30, he was not an employee under the FLSA because "the 'principal benefit' of Plaintiff's participation in the program was to him" and "Vaughn did not agree to participate in the Phoenix House treatment program for the purpose of receiving monetary compensation . . . [but] to resolve the criminal charges against him," *Vaughn*, 2015 WL 5671902, at *8; *see also Doyle v. City of New York*, 91 F. Supp. 3d 480, 487 (S.D.N.Y. 2015) (rejecting the FLSA claims of plaintiffs performing community service because the "'principal benefit of the relationship' was . . . to [p]laintiffs" and monetary compensation did not "play[] *any* role in their decision to" join the program).

Vaughn also argues that he is an employee in light of 29 C.F.R § 525. This chapter of the Code of Federal Regulations implements sections of the FLSA that allow for disabled workers to be paid for their work at "special minimum wage rates below the rate that would otherwise be required by statute." 29 C.F.R § 525.1. Relying on the definitions and "Wage Payments" sections of this chapter, 29 C.F.R §§ 525.3, 525.5, Vaughn argues that an individual like himself who does not come within the terms of the Chapter "must be paid at least the applicable minimum wage," SAC at 29. Vaughn is correct that he does not qualify as a disabled worker under these regulations. *See* 29 C.F.R. § 523.3(d). But that does not mean that he was an "employee" of Phoenix House

9

entitled to the protections of the FLSA either. Accordingly, Vaughn's FLSA claim must be dismissed.

## II.    Supplemental Jurisdiction

Pursuant to 28 U.S.C. § 1367(c)(3), "district courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction." *Id.* "In deciding whether to exercise jurisdiction over supplemental state-law claims, district courts should balance the values of judicial economy, convenience, fairness, and comity . . . ." *Klein & Co. Futures v. Bd. of Trade of City of New York*, 464 F.3d 255, 262 (2d Cir. 2006). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Here, there are no unusual circumstances warranting the continued exercise of supplemental jurisdiction over Vaughn's claims under state and city law. Accordingly, they too are dismissed. *See Vaughn*, 2015 WL 5671902, at \*9.

## III.   Leave to Amend

Finally, Defendants urge the Court not to give Vaughn yet another opportunity to amend his Complaint. Whether to grant or deny leave to amend is committed to the "sound discretion of the district court," and leave may be denied when amendment would prove futile for the reason that the amended pleading would not survive a renewed motion to dismiss. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "Generally," however, "leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Nielsen*, 746 F.3d at 62.

Here, the Court has already given Vaughn two opportunities to amend his complaint. *See* Dkt. 4, 52. In its Order granting Vaughn leave to file the SAC, the Court noted that "[i]n light of

10

the principles articulated herein, the Court is doubtful that any amendment to the Complaint would cure its deficiencies." *Vaughn*, 2015 WL 5671902, at \*9. As Vaughn has indeed been unable to cure his complaints' deficiencies, the Court declines to grant him leave to file a third amended complaint. *See Best v. City of New York*, No. 12-CV-7874 (RJS), 2014 WL 163899, at \*3 (S.D.N.Y. Jan. 15, 2014) (declining to grant leave to amend where plaintiff had already been given two opportunities to do so, and noting that "the Court can only afford him so many bites at the apple"); *Parker v. DeBuono*, No. 98-CV-5765 (NRB), 2000 WL 223841 (S.D.N.Y. Feb. 25, 2000), *aff'd sub nom. Parker v. Com'r DeBuono*, 242 F.3d 366 (2d Cir.2000) ("Leave to amend is appropriately denied where, as here, plaintiff has already had two opportunities to replead and the benefit of specific warnings as to his complaints' deficiencies.").

## CONCLUSION

For the reasons stated above, the Second Amended Complaint is dismissed with prejudice. The Clerk of the Court is respectfully directed to terminate items 54 and 67 on the docket and to close the case.

SO ORDERED.

Dated:    August 9, 2016
          New York, New York

Ronnie Abrams
United States District Judge