**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MARK VAUGHN,

                              Plaintiff,

               -v-                                            No. 14-CV-3918 (RA)

PHOENIX HOUSE FOUNDATION, INC. and
PHOENIX HOUSES OF NEW YORK, INC.,

                              Defendants.


**MEMORANDUM OF PHOENIX HOUSE FOUNDATION, INC. AND PHOENIX HOUSES OF NEW YORK, INC. IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**


CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Attorneys for Defendants Phoenix House*
*Foundation, Inc. and Phoenix Houses of New*
*York, Inc.*


July 9, 2018

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................... 1

PROCEDURAL HISTORY............................................................................................. 1

STATEMENT OF FACTS .............................................................................................. 2

ARGUMENT ................................................................................................................... 4

I.      THE FLSA DOES NOT APPLY TO PATIENTS AT RESIDENTIAL
SUBSTANCE ABUSE TREATMENT FACILITIES ......................................... 5

          A.     The Glatt Tests Shows That Plaintiff Was the Primary Beneficiary of His
Relationship with Defendants. ............................................................... 6

          B.     No Other Test Suggests That the "Economic Reality" of Any Work
Performed by Plaintiff Rendered Him an Employee of Defendants. .................... 10

II.     PLAINTIFF'S FLSA CLAIM IS TIME-BARRED .......................................... 17

III.    THE ADDITION OF PHOENIX HOUSE FOUNDATION AS A DEFENDANT
IS TIME-BARRED............................................................................................. 19

IV.    PLAINTIFF'S STATE LAW CLAIMS SHOULD ALSO BE DISMISSED .................. 20

CONCLUSION............................................................................................................... 22

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Ashcroft v. Iqbal, 556 U.S. 662 (2009)........................................................................4, 9

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) .................................................................4

Briggs v. County of Monroe, 215 F. Supp. 3d 213 (W.D.N.Y. 2016)..........................................19

Brown v. N.Y. City Dep't of Educ., 755 F.3d 154 (2d Cir. 2014) ..................................................5

Castellano v. Bd. of Tr. of Police Officers' Variable Supplements Fund, 937 F.2d
    752 (2d Cir. 1991)..................................................................................................20

Danneskjold v. Hausrath, 82 F.3d 37 (2d Cir. 1996)....................................................10, 14, 15, 16

Doyle v. City of New York, 91 F. Supp. 3d 480 (S.D.N.Y. 2015)...............................5, 15, 16, 17

Dweck v. Pacificorp Capital, Inc., No. 91 Civ. 2095 (MJL), 1998 WL 88742
    (S.D.N.Y. Mar. 2, 1998) ..........................................................................................2

Fischer v. Forrest, Nos. 14 Civ. 1304 (PAE) (AJP), 14 Civ. 1307 (PAE) (AJP),
    2017 WL 128705 (S.D.N.Y. Jan. 13, 2017) .....................................................................19

Glatt v. Fox Searchlight Pictures, Inc., 811 F.3d 528 (2d Cir. 2016) .................................... passim

Hart v. Rick's Cabaret Int'l, Inc., 967 F. Supp. 2d 901 (S.D.N.Y. 2013)....................................17

Irizarry v. Catsimatidis, 722 F.3d 99 (2d Cir. 2013)...............................................................5

Kavazanjian v. Naples, No. 06-CV-3390 (JG), 2006 WL 2795220 (E.D.N.Y. Sep.
    26, 2006) ............................................................................................................9

Kolari v. New York-Presbyterian Hosp., 455 F.3d 118 (2d Cir. 2006)........................................20

Lee v. ABC Carpet & Home, 236 F.R.D. 193 (S.D.N.Y. 2006) .................................................18

Mark v. Gawker Media LLC, No. 13-cv-4347 (AJN), 2016 WL 1271064
    (S.D.N.Y Mar. 29, 2016) ..........................................................................................5

McBride v. Routh, 189 F.R.D. 48 (D. Conn. 1999) ................................................................18

McLaughlin v. Richland Shoe Co., 486 U.S. 128 (1988)..........................................................17

Merryman v. J.P. Morgan Chase Bank, NA, 319 F.R.D. 468 (S.D.N.Y. 2017)...........................19

Miller v. Dukakis, 961 F.2d 7 (1st Cir. 1992)......................................................................16

<u>Neal v. Wilson</u>, 239 F. Supp. 3d 755 (S.D.N.Y. 2017) ...........................................................19, 20

<u>Powell v. U.S. Cartridge Co.</u>, 339 U.S. 497 (1950)........................................................................16

<u>Salinas v. Starjem Restaurant Corp.</u>, 123 F. Supp. 3d 442 (S.D.N.Y. 2015) ................................17

<u>Sanders v. Hayden</u>, 544 F.3d 812 (7th Cir. 2008) ........................................................................16

<u>Thompson v. Dolgencorp, LLC</u>, 304 F.R.D 641 (E.D. Okl. 2015) ................................................18

<u>Tony & Susan Alamo Foundation v. Sec'y of Labor</u>, 471 U.S. 290 (1985)....................................5

<u>United States v. McKeon</u>, 738 F.2d 26 (2d Cir. 1984) ...................................................................2

<u>Vaughn v. Phoenix House Programs of N.Y.</u>, No. 14-CV-3918 (RA), 2015 WL
    5671902 (S.D.N.Y. Sept. 25, 2015)......................................................................... passim

<u>Vaughn v. Phoenix House Programs of N. Y.</u>, 722 Fed. Appx. 4 (2d. Cir. 2018) ..........................2

<u>Vaughn v. Phoenix House Programs of N. Y.</u>, No. 14-CV-3918 (RA), 2016 WL
    4223748 (S.D.N.Y. Aug. 9, 2016) .................................................................................2

<u>Walling v. Portland Terminal Co.</u>, 330 U.S. 148 (1947) ...............................................................15

<u>Williams v. Strickland</u>, 87 F.3d 1064 (9th Cir. 1996) ...................................................................15

<u>Wingate v. N.Y. City</u>, No. 14-CV-4007 (ARR), 2014 WL 3747641 (E.D.N.Y.
    July 25, 2014)....................................................................................................................16

## Statutes, Rules & Regulations

12 N.Y.C.R.R. § 142-2.14(a) .........................................................................................................20

14 N.Y.C.R.R. § 819.........................................................................................................10, 11, 12

29 U.S.C. § 203(e)(1)...................................................................................................................5, 20

29 U.S.C. § 255 .............................................................................................................................17

Fair Labor Standards Act ("FLSA") ....................................................................................... passim

Fed. R. Civ. Proc. 4(m) ...............................................................................................................20

Fed. R. Civ. Proc. 12(b)(1) ...........................................................................................................1

Fed. R. Civ. Proc. 12(b)(6) ...........................................................................................................1

Fed. R. Civ. Proc. 21 ....................................................................................................................18

Fed. R. Civ. Proc. 15(c) ..............................................................................................19, 20

Fed. R. Civ. Proc. 19 ........................................................................................................18

N.Y. C.P.L.R. § 1024, 203 ...............................................................................................19

New York Labor Law ("NYLL") ...............................................................................1, 20, 21

**Other Authorities**

Nancy K. Young, U.S. Dep't of Health and Human Servs., Substance Abuse and
    Mental Health Servs. Admin, Tip 38: Integrating Substance Abuse Treatment
    and Vocational Services: Treatment Improvement Protocol (TIP) Series 38,
    http://adaiclearinghouse.org/downloads/TIP-38-Integrating-Substance-Abuse-
    Treatment-and-Vocational-Services-56.pdf.............................................................12, 13, 14

Phoenix House Foundation, Inc. ("PHF") and Phoenix Houses of New York, Inc.

("PHNY") (collectively, "Defendants") respectfully submit this memorandum in support of their

motion to dismiss the Third Amended Complaint ("TAC") filed by Plaintiff Mark Vaughn,

pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure ("FRCP").

## PRELIMINARY STATEMENT

Plaintiff, a former patient of PHNY, alleges that Defendants violated the Fair

Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") by failing to pay him

wages for work he allegedly performed while receiving treatment for substance abuse at PHNY's

residential treatment facilities.  Plaintiff's claims fundamentally misconstrue the function of

work therapy in residential substance-abuse treatment programs like those run by PHNY,

programs that simply do not come within the purview of the FLSA or the NYLL.  In treating

Plaintiff, PHNY's purpose was to provide him with the necessary tools to overcome addiction

and successfully re-enter society.  PHNY and Plaintiff did not have an employer/employee

relationship, and the work Plaintiff performed was for his benefit, not for the benefit of PHNY.

Plaintiff has now had four opportunities to plead his case; this time, with the help of counsel.

Plaintiff remains unable sufficiently to allege a legal cause of action or to overcome the fact that

his claims are clearly time-barred.  For these reasons, the TAC should be dismissed with

prejudice.

## PROCEDURAL HISTORY

Plaintiff filed his original Complaint in this action on May 12, 2014, and an

Amended Complaint on September 10, 2014.  On September 25, 2015, this Court granted

Defendant's motion to dismiss Plaintiff's Amended Complaint, but allowed Plaintiff a second

opportunity to amend his pleadings.  Vaughn v. Phoenix House Programs of N.Y., No. 14-CV-

3918 (RA), 2015 WL 5671902, at *9 (S.D.N.Y. Sept. 25, 2015) ("Vaughn I") .  On August 9,

2016, this Court granted Defendant's motion to dismiss Plaintiff's Second Amended Complaint

("SAC") with prejudice.  Vaughn v. Phoenix House Programs of N. Y., No. 14-CV-3918 (RA),

2016 WL 4223748, at *5 (S.D.N.Y. Aug. 9, 2016) ("Vaughn II").  On appeal, the Second Circuit

affirmed the dismissal of all but two alleged violations of law, remanding the case for

consideration of the FLSA and NYLL claims in light of the recently decided Glatt v. Fox

Searchlight Pictures, Inc., 811 F.3d 528 (2d Cir. 2016).  Vaughn v. Phoenix House Programs of

N. Y., 722 F. App'x. 4, 6 (2d Cir. 2018) ("Summary Order").  Plaintiff filed his TAC on April

30, 2018.[1]

## STATEMENT OF FACTS

As set forth in the TAC (the allegations of which Defendants accept as true for

purposes of this motion only), Plaintiff had a long history of substance abuse, beginning when he

was a 12-year-old child.  (TAC ¶ 22.)  In July 2009, Plaintiff was charged criminally in

connection with his substance abuse issues, and he was given the option of participating in an in-

patient drug rehabilitation program rather than go to prison.  (TAC ¶¶ 1, 9); see also Vaughn I at

*1 & nn.3-4.

T.A.S.C. or D.T.A.P. — New York State programs designed as alternatives to

incarceration for those with substance abuse problems — recommended that Plaintiff receive

---

[1] The TAC omits numerous assertions from Plaintiff's earlier complaints, presumably because they do not support his current theory.  However, these earlier allegations are part of the record in this case, and indeed formed the basis for prior decisions of this Court.  Accordingly, it is proper for Defendants to cite them here.  See Dweck v. Pacificorp Capital, Inc., No. 91 Civ. 2095 (MJL), 1998 WL 88742, at *7 (S.D.N.Y. Mar. 2, 1998) (citing United States v. McKeon, 738 F.2d 26, 31 (2d Cir. 1984)) ("It is well-established in the Second Circuit that superseded pleadings, while not judicial admissions per se, may be introduced as evidence and considered an admission.").

treatment from PHNY, which provides treatment and prevention services for individuals challenged by substance abuse disorders and related mental health conditions at facilities throughout New York.  (See TAC ¶ 16.)  Plaintiff began his treatment at PHNY's Long Island City ("LIC") facility on July 28, 2009 and was informed during orientation that he would be required to work.  (Id. ¶¶ 21-25.)  Plaintiff was also alerted to PHNY's work element prior to entering the program, as during "the admission/intake process", "a person must sign some kind of a work agreement or you cannot enter into the program".  (Am. Compl., Dkt. 5, at 15 ("Am. Compl.").)  Plaintiff was further informed at various points during his treatment by employees and the house manager that the work was "part of the treatment program", and that Plaintiff could not remain at PHNY if he refused to work.  Vaughn I at *1.  Noting that the alternative was "going to jail", Plaintiff initially agreed to perform his work duties.  Id.

          During his first round of treatment, Plaintiff lived at PHNY facilities for approximately 14 months:  he stayed at the LIC facility from August 2009 to November 2009 and at the Jay Street facility from November 2009 until he completed his rehabilitation program and was discharged in October 2010.  (TAC ¶¶ 21-41.)  Because Plaintiff did not satisfy his parole requirements, he was referred to PHNY again for additional treatment.  (TAC ¶ 42.)  During his second round of treatment, Plaintiff lived at PHNY facilities for approximately 11 months:  he stayed at the LIC facility between February 2011 and November 2011, and at PHNY's Prospect Place location from November 2011 until January 2012.  (TAC ¶¶ 42-49.)  Throughout his two stays, Plaintiff was assigned various responsibilities, including "basement point", where he was required to staff the basement desk, organize pertinent information and communicate that information to other patients (id. ¶¶ 30-31, 34); garbage room duty, where he collected garbage, sorted the recycling and cleaned the room and bins (id. ¶¶ 32-33); overnight

coordination, where he was expected to relay information from staff to patients, and to assume other regular tasks, including making rounds and verifying patient entry and exit; and warehouse shift, where he assisted with packing food and delivering it to other PHNY facilities (id. ¶¶ 46-47).  The nature of his assignments varied in length and time of day.  (Id. ¶¶ 32, 34-35, 38, 46-47, 50.)

Shortly after entering treatment at PHNY, Plaintiff began frequently to complain about his work duties, including sending a complaint letter to the New York State Office of Alcohol and Substance Abuse Services ("OASAS") regarding the work requirement.  Vaughn I at *2.  He refused to work at the Jay Street facility in mid-January 2010, resulting in an intervention by the T.A.S.C. program.  Id.; (TAC ¶¶ 36-39.)   He also refused to perform his assigned job functions during his second stay at the LIC facility, resulting in an intervention by a judge.  Vaughn I at *2.  He further complained to the Department of Labor.  (Am. Compl. at 12.)  Uniformly, the responses Plaintiff received to his complaints underscored the necessity of work for the completion of Plaintiff's treatment.  Vaughn I at *1-3.  And each time, Plaintiff elected to continue with the treatment program at PHNY.

## ARGUMENT

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face".  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is facially plausible only when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged".  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Moreover, when deciding what is plausible, a district court must consider the context and "draw on its judicial experience and common sense".  Id. at 679.  For the reasons set forth below, Plaintiff has failed to meet this burden and therefore the TAC should be dismissed.

4

I.      THE FLSA DOES NOT APPLY TO PATIENTS AT RESIDENTIAL SUBSTANCE
        ABUSE TREATMENT FACILITIES

        For the FLSA to apply to Plaintiff's work activities at PHNY, Plaintiff must be an

"employee" within the meaning contemplated by the statute.  Tony & Susan Alamo Foundation

v. Sec'y of Labor, 471 U.S. 290, 295 (1985).  "Plaintiffs bear the burden of demonstrating that

they were employees entitled to the protections of the FLSA".  Mark v. Gawker Media LLC, No.

13-cv-4347 (AJN), 2016 WL 1271064, at *9 (S.D.N.Y Mar. 29, 2016).  Plaintiff does not

(because he cannot) sufficiently plead that he was an employee of Defendants.

        The FLSA defines an "employee" as "any individual employed by an employer".

29 U.S.C. § 203(e)(1).  An "employer includes any person acting directly or indirectly in the

interest of an employer in relation to an employee" and "'employ' includes to suffer or permit to

work".  Id. at § 203(d), (g).  When contemplating "employment for FLSA purposes", the Second

Circuit has adopted a "totality of circumstances" approach, in which determining "whether an

employer-employee relationship exists" depends on the "economic reality" of that relationship.

Irizarry v. Catsimatidis, 722 F.3d 99, 104 (2d Cir. 2013); Doyle v. City of New York, 91 F.

Supp. 3d 480, 486 (S.D.N.Y. 2015) (internal quotation marks and citations omitted).  These

economic realities are not assessed by a "single . . . test consisting of uniform factors", but "by

reference to 'the particular situation' with some factors more important than others depending on

the FLSA question at issue and the context in which it arises".  Brown v. N.Y. City Dep't of

Educ., 755 F.3d 154, 167 (2d Cir. 2014).

        One factor courts evaluate in determining whether a person is an "employee"

within the meaning of the FLSA — and the factor that is most critical in the context of this

matter — is whether the person or the alleged employer is the "primary beneficiary of the

relationship".  Glatt, 811 F.3d at 536.  Plaintiff here cannot plausibly allege that Defendants were

the primary beneficiaries of the relationship, nor can he point to any other factor suggesting that

he was an employee.

> A.     <u>The Glatt Tests Shows That Plaintiff Was the Primary Beneficiary of His
> Relationship with Defendants.</u>

The Second Circuit, in its Summary Order, remanded this case specifically for

consideration of Plaintiff's FLSA claim in light of <u>Glatt v. Fox Searchlight Pictures, Inc.</u>, which

addressed the "circumstances [under which] an unpaid intern must be deemed an 'employee'

under the FLSA and therefore compensated for his work". 811 F.3d at 533. As the <u>Glatt</u> court

noted: "[A]ll parties agree that there are circumstances in which someone who is labeled an

unpaid intern is actually an employee entitled to compensation under the FLSA. All parties also

agree that there are some circumstances in which unpaid interns are not employees under the

FLSA." <u>Id.</u> at 535. In determining when an unpaid intern is an employee entitled to FLSA

wages, the court stated that "the proper question is whether the intern or the employer is the

primary beneficiary of the relationship". <u>Id.</u> at 536. The <u>Glatt</u> court found that this "primary

beneficiary test has three salient features":  (1) "it focuses on what the intern receives in

exchange for his work"; (2) it "accords courts the flexibility to examine the economic reality as it

exists between the intern and the employer"; and (3) it acknowledges that "the intern enters into

the relationship with the expectation of receiving educational or vocational benefits that are not

necessarily expected with all forms of employment". <u>Id.</u>

To aid courts in navigating the "primary beneficiary test", and to underscore the

"central" role that education plays in "the modern internship", the Second Circuit also articulated

a non-exhaustive list of seven considerations (discussed below) to assist in identifying the

primary beneficiary of the internship. <u>Id.</u> at 536-37. As a threshold matter, Defendants submit

that the seven factors enumerated in <u>Glatt</u> are inapplicable to residential substance-abuse

6

treatment facilities.[2]  Patients at these facilities are not interns and suggesting otherwise ignores the medical and therapeutic nature of this rehabilitative treatment.  However, because the Second Circuit remanded this case for reconsideration in light of Glatt, and assuming for purposes of this motion that the Glatt criteria can be applied in the context of substance abuse treatment, the factors clearly establish that Plaintiff was the primary beneficiary of his treatment at PHNY.

        i.      The extent to which the intern and the employer clearly understand that there is no expectation of compensation.

Plaintiff makes no allegations in his TAC that he expected compensation or that any compensation was expressly or impliedly promised to him.  Rather, he admits he opted to receive treatment from PHNY in order to become disciplined and turn his life around.  (TAC ¶ 22) (anticipating that PHNY would provide "the therapy he needed to lead a drug-free life and . . . be a good parent to his young daughter").  Plaintiff "did not agree to participate in the [PHNY] treatment program for the purpose of receiving monetary compensation", but to "resolve the criminal charges against him", which demonstrates that he chose to work for his own advantage.  Vaughn I at *8.  Tellingly, Plaintiff completed a round of therapy during which he performed job functions and was subsequently discharged.  There is no allegation in the TAC that Plaintiff expected to undergo residential substance abuse treatment again.  Yet, a few months later, Plaintiff returned for a second round of treatment, with a full understanding of what would be required of him.  Despite knowing that his therapy would include job functions and that he would not be paid for this work, Plaintiff chose to be treated by PHNY again, demonstrating his recognition of the benefit he was receiving from treatment, including the work component.

---

[2] The decision itself states that "[t]he approach we adopt . . . is confined to internships and does not apply to training programs in other contexts".  Id. at 537.

      ii.     The extent to which the internship provides training that would be similar to that which would be given in an educational environment, including the clinical and other hands-on training provided by educational institutions.

This factor also demonstrates that Plaintiff benefited from the work function of therapy because the work he performed was similar to clinical and hands-on training provided by educational institutions. Although Plaintiff argues that the work he performed was "menial" and "low wage" (TAC ¶ 52), this was a result of Plaintiff's circumstances — he was in a treatment facility after being criminally charged. Learning how successfully to reintegrate into society through the hands-on experiences of responsibility and accountability are important steps in treatment.

      iii.    The extent to which the internship is tied to the intern's formal education program by integrated coursework or the receipt of academic credit.

Although the work performed by Plaintiff was not linked to a "formal education program", it was tied to a formal therapeutic program. As explained more fully in Section I(B)(i) below, Plaintiff's job functions were an integral part of his therapy. Just as an internship is "tied to the intern's formal education program by integrated coursework or the receipt of academic credit", Plaintiff's work therapy was closely tied to and integrated into PHNY's treatment programs.

      iv.    The extent to which the internship accommodates the intern's academic commitments by corresponding to the academic calendar.

Given that Plaintiff was not enrolled in an academic institution during his treatment at PHNY, this factor is not applicable. Moreover, this factor in particular demonstrates that FLSA criteria related to internships should not apply in a rehabilitative setting. Patients seek drug treatment out of dire need, and not to obtain a supplemental educational experience.

8

v.     The extent to which the internship's duration is limited to the period in which the internship provides the intern with beneficial learning.

This factor also weighs in favor of Defendants.  The duration of Plaintiff's treatment programs were tied to his treatment progress.  (See TAC ¶¶ 9-10.)  There was no expectation (or possibility) that Plaintiff would stay at PHNY indefinitely.  All parties understood that Plaintiff would complete his therapy program and return home.

vi.    The extent to which the intern's work complements, rather than displaces, the work of paid employees while providing significant educational benefits to the intern.

Plaintiff claims, in conclusory fashion and with no particularized supporting factual allegations, that Plaintiff's work "allow[ed] Phoenix House to avoid paying staff members to perform the work".  (TAC ¶ 58.)  Putting aside the fact that such conclusory allegations are insufficient to survive a motion to dismiss, Iqbal, 556 U.S. at 680, they are belied by other facts asserted by Plaintiff previously.  As overnight coordinator, for example, Plaintiff claims he sat "at the front desk with a staff member and relayed to the point person's [sic] what the staff told [him] to tell them" (Am. Compl. at 5), indicating that his work was duplicative of PHNY staff, rather than a substitute.  As another example, Plaintiff worked with non-patient workers/drivers during his warehouse deliveries.  (Second Am. Compl., Dkt. 53, at 6 ("SAC").)  Moreover, in addition to the hours spent by staff tasked with working alongside Plaintiff in certain roles, PHNY counselors expended time and effort not only instructing Plaintiff but actively monitoring his progress (and reporting back to the court), and even conducting the numerous interventions that followed each refusal to work rather than expel him for failure to comply with the rules.  (See, e.g., TAC ¶¶ 36, 39, 41, 43.)  These behaviors are not indicative of an employer seeking to cut costs in order to increase profits as Plaintiff alleges, including by pointing to PHF's "operating revenues".  (TAC ¶¶ 20, 61.)  Indeed, this theory is especially

farfetched given that Defendants are nonprofit organizations.  Plaintiff's work tasks were designed to provide him with "an opportunity for job skills and training".  <u>Kavazanjian v. Naples</u>, No. 06-CV-3390 (JG), 2006 WL 2795220, at *2 (E.D.N.Y. Sep. 26, 2006); <u>see also</u> <u>infra</u> Section I(B)(i).  Furthermore, Plaintiff's services were not sold in commerce and were not "the sort that would undermine the FLSA wage scale."  <u>Kavazanjia</u>n, 2006 WL 2795220, at *2 (quoting <u>Danneskjold v. Hausrath</u>, 82 F.3d 37, 44 (2d Cir. 1996)).

vii.   The extent to which the intern and the employer understand that the internship is conducted without entitlement to a paid job at the conclusion of the internship.

Once again, this factor clearly weighs in favor of Defendants.  There are no allegations in the TAC that Plaintiff sought treatment services from PHNY with any expectation or entitlement to a paid position at PHNY upon completion of either of his two treatment cycles.

As is apparent when analyzing the <u>Glatt</u> factors, and as this Court previously has found, the "'principal benefit' of Plaintiff's participation in the program was to him".[3]  <u>Vaughn I</u> at *8.

B.   <u>No Other Test Suggests That the "Economic Reality" of Any Work Performed by Plaintiff Rendered Him an Employee of Defendants.</u>

Not only does the <u>Glatt</u> test demonstrate that Plaintiff was the primary beneficiary of his relationship with PHNY, but when analyzing the totality of the circumstances, the "economic reality" of the work performed by Plaintiff clearly shows that he was not an employee of Defendants.

---

[3] Plaintiff's TAC is especially devoid of allegations related to PHF, which is the parent entity of PHNY and entirely separate. (See TAC ¶ 12.)  While Plaintiff alleges in a conclusory manner that PHF "administered the residential treatment program", Plaintiff alleges no interaction or relationship at all with PHF and has failed to establish any basis under which PHF could conceivably have employed him.

i.    Work therapy is an integral part of residential rehabilitation programs under New York law.

As Plaintiff acknowledged in his Second Amended Complaint, the PHNY programs he attended were subject to Section 819 of New York State's Codes, Rules and Regulations.  (See SAC, Dkt. 53-1, at 14-15.)  Section 819.2 provides:  "A chemical dependence residential service shall have as its goals . . . the attainment of self-sufficiency, including, where appropriate, the ability to be functionally employed, and the improvement of the resident's quality of life."  14 N.Y.C.R.R. § 819.2(d).  Section 819 also sets forth requirements for certain types of "residential rehabilitation services", including "intensive residential rehabilitation" and "community residential services".  "Intensive residential rehabilitation services" are:

> "[R]esidential services requiring twenty four hours a day, seven days per week treatment in a structured environment for individuals whose potential for independent living in recovery is contingent upon substantial social habilitation or rehabilitation."

Id. at §819.2(a)(1).  "Community residential services" are:

> "[C]hemical dependence residential services providing supervised services to persons making the transition to abstinent living. Persons appropriate for this service [r]equire the support of a drug and alcohol-free environment while receiving either outpatient services or educational and/or vocational services.  These transitional residential services are for individuals who are completing or have completed a course of treatment, but who are not yet ready for independent living due to outstanding clinical issues or unmet needs for personal, social or vocational skills development."

Id. at 819.2(a)(2).

Plaintiff's complaints, which describe different types of treatments he received at various points during his two stays at PHNY, suggest that he was provided with both types of rehabilitation services contemplated by Section 819 as he progressed through the programs.

And both types of rehabilitation services include work therapy as an integral part of their

required clinical services.  See id. at 819.2(a)(1)-(2).  Section 819(8), which is titled, "Additional

requirements for intensive residential rehabilitation" states:

> "(b) Clinical services.  Intensive residential services are required to
> provide a minimum of forty hours per week within a structured
> therapeutic environment, consisting of the services identified in
> Section 819.4 of this Part and include the following:
>
> (1) Rehabilitation and/or habilitation services.
>
> (i) Each service shall ensure that a comprehensive and appropriate
> range of rehabilitative services are available to each resident.  Such
> services include, but are not limited to:
>
> (A) vocational services such as vocational assessment, job skills
> training, and employment readiness training;
> (B) educational remediation services; and
> (C) life, parenting and social skills training."

Id. at § 819(8)(b).  Section 819(9), which is titled, "Additional requirements for community

residential services" states:  "The individual must be determined to need outpatient treatment

and/or other support services such as vocational or educational services, in addition to the

residential services provided by the community residence."  Id. at § 819(9)(a)(2).  As part of the

"development and improvement of the skills necessary for recovery", Section 819(9) requires

treatment centers to, among other things:

> "ensure that a comprehensive and appropriate range of
> rehabilitative procedures are available to each resident.  Such
> services include but are not limited to:
>
> (A) vocational services such as vocational assessment;
> (B) job skills training, and employment readiness training;
> (C) educational remediation; and
> (D) life, parenting and social skills training."

Id. at § 819(9)(b)(2), (b)(3)(iv).

Although Plaintiff alleges that his job functions were "non-therapeutic" (TAC ¶ 1), this is wrong as a matter of law.  As these codes make clear, a residential treatment program is a holistic program that treats substance abuse disorders in various ways, including by preparing the patients to function effectively in society.  As stated by the United States Department of Health and Human Services' Substance Abuse and Mental Health Services Administration ("SAMHSA"):  "Awareness is growing about the importance of, and in most cases, the necessity of work in the recovery process.  Work is central to the existence of adult functioning; in addition to providing the funds needed to live, work supplies status and security for an individual."[4]  Residential treatment facilities are microcosms of a real community, in which members must learn the importance of behaviors such as having a regular schedule, showing up on time, and responsibility to a community, among many other essential life skills. Moreover, although these skills are helpful from a vocational perspective, work therapy is not only about employment readiness training — it also contributes to the much broader objective of overall rehabilitation.[5]

---

[4] Nancy K. Young, U.S. Dep't of Health and Human Servs., Substance Abuse and Mental Health Servs. Admin., Tip 38: Integrating Substance Abuse Treatment and Vocational Services: Treatment Improvement Protocol (TIP) Series 38, Ch. 2, http://adaiclearinghouse.org/downloads/TIP-38-Integrating-Substance-Abuse-Treatment-and-Vocational-Services-56.pdf (last visited July 3, 2018).

[5] As further set forth by the SAMHSA:

> "Therapeutic communities provide a wide range of internal work adjustment opportunities in the form of chores or job functions that support the day-to-day operations of the program and facility. . . . [W]ork assignments are designed to enhance clients' strengths and build self-esteem by helping clients 'discover' skills they did not realize they had.  These work assignments focus clients on the importance of completing a task, working as a team member, and developing a sense of pride and personal satisfaction in a job well done.  Early work assignments usually are less complex, guarantee initial success for most clients, and offer an opportunity for

Even if Plaintiff's claims are true, and the work he performed "did not contribute to his treatment plans or goals" or "exceeded what is permissible under New York State regulations", his remedy is not in the FLSA.[6]  Plaintiff has not alleged that he worked to "produce goods or services that [were] sold in commerce".  See Danneskjold, 82 F.3d at 44.  Rather, the duties he allegedly performed are precisely the work contemplated by SAMHSA— "chores or job functions that support the day-to-day operations of the program and facility".  See Tip 38: Integrating Substance Abuse Treatment and Vocational Services: Treatment Improvement Protocol (TIP) Series 38, Ch. 4, http://adaiclearinghouse.org/downloads/TIP-38-Integrating-Substance-Abuse-Treatment-and-Vocational-Services-56.pdf.  In other words, his duties were directly linked to the maintenance of his residential community, which trained him "in the discipline and skills of work".  Danneskjold, 82 F.3d at 43.  Notably, when Plaintiff complained to the Department of Labor, it declined to take any action, informing him that it had "no authority" over the program.  Vaughn I at 3.

Had Plaintiff been an employee of PHNY, he likely would have been terminated shortly after his "employment" began.  As detailed in his various complaints, Plaintiff refused to

> advancement to more responsible positions in the structure.  Later, as clients demonstrate a commitment to their treatment goals and an ability to handle work positions of increasing responsibility, assignments become more complex and are designed to address behavioral areas clinically identified as essential to progress in recovery.  Other work skills emphasized in work adjustment training are attention to details, successful task completion, frustration tolerance, and accountability."

Id. at Ch. 4.

[6] Indeed, Plaintiff admits that the body responsible for regulating PHNY and other treatment providers, OASAS, does in fact monitor PHNY and takes action when violations allegedly occur. (See TAC ¶¶ 65-68.)  Notably, the TAC does not allege that any "persistent regulatory violations" occurred at the PHNY facilities at which Plaintiff was in treatment while he was there.

work on multiple occasions and failed to perform his jobs adequately.  But the arrangement

between PHNY and Plaintiff was not one of employer and employee; it was one of treatment

facility and patient, which is why PHNY repeatedly arranged for interventions with outside

sources to help Plaintiff achieve his treatment goals.  Plainly, the economic reality of the

relationship between Plaintiff and PHNY compels the conclusion that it "is not an employment

relationship within the meaning of the FLSA".  Danneskjold, 82 F.3d at 44.

        ii.        Courts have rejected Plaintiff's theory of liability.

Plaintiff was a patient in a residential treatment program whose work therapy

duties were designed to provide life skills necessary to becoming a contributing member of

society, including, but not limited to, vocational or pre-vocational training.  As the Supreme

Court recognized in Walling v. Portland Terminal Co., those engaged in practical training are not

considered employees under the FLSA.  330 U.S. 148, 152-53 (1947).  In so deciding, the

Portland Terminal Court noted that "'suffer or permit to work' was obviously not intended to

stamp all persons as employees who, without any express or implied compensation agreement,

might work for their own advantage on the premises of another".  Id. at 152.

The Ninth Circuit relied on Portland Terminal in holding that a residential

rehabilitation center patient who engaged in work therapy was not an employee under the FLSA.

Williams v. Strickland, 87 F.3d 1064, 1067 (9th Cir. 1996).  The Williams court noted that a

relationship that "contemplate[s] only rehabilitation" is not covered by the Act, and the work

therapy was "solely rehabilitative" because it was "not performed in exchange for in-kind

benefits, but rather . . . a sense of self-worth, accomplishment, and enabled [the plaintiff] to

overcome his drinking problems and reenter the economic marketplace".  Id.

The importance of holding that the FLSA does not apply to Plaintiff is magnified

when the economic reality test is applied at an even "higher level of generality" to take account

of "the kind of employment relationship Congress had in mind when it enacted the FLSA". Doyle, 91 F. Supp. 3d at 487 (quoting Danneskjold, 82 F.3d at 42-43).  Quoting the Supreme Court in Powell v. U.S. Cartridge Co., 339 U.S. 497 (1950), the Doyle court noted that the FLSA was adopted to "eliminate . . . substandard labor conditions throughout the nation" and "raise living standards without substantially curtailing employment or earning power".  Doyle, 91 F. Supp. 3d at 487 (quoting Powell, 339 U.S. at 509-10).  The court went on to note that "[e]xtending the FLSA to cover those whom a court orders to perform community service in lieu of criminal prosecution would do little to advance that purpose".  Id. at 487-88.

    That Congress did not intend the FLSA to cover the present case is further supported by case law in the circuits that have addressed this issue, which holds that the Act does not extend to work performed as part of a court order related to criminal charges.  See Danneskjold, 82 F.3d at 44 (holding that prison inmate was not an employee for work performed as a clerk-tutor in a prison education program); Sanders v. Hayden, 544 F.3d 812, 814 (7th Cir. 2008) (holding that sex offenders compelled to work at their treatment centers are not "employees"); Miller v. Dukakis, 961 F.2d 7, 9 (1st Cir. 1992) (same); Wingate v. N.Y. City, No. 14-CV-4007 (ARR), 2014 WL 3747641, at *2 (E.D.N.Y. July 25, 2014) (holding that pre-trial detainees are not protected by FLSA).

    Finally, applying the FLSA to rehabilitative programs like the ones run by PHNY would not only be inconsistent with Congress's purpose in enacting the FLSA, but would also undermine the purpose and potentially even the availability of residential substance abuse treatment programs.  As Doyle explains, embracing individuals in Plaintiff's position as "employees" under the FLSA would "threaten to undermine the efficacy of programs like New York's ACD program, as judges and prosecutors might be less inclined to agree to ACDs if

doing so would require City agencies to pay for labor that they might not otherwise have even wanted". Doyle, 91 F. Supp. 3d at 488.

II.      PLAINTIFF'S FLSA CLAIM IS TIME-BARRED

Plaintiff's FLSA claim should independently be dismissed because it is untimely. The applicable statute of limitations for an FLSA violation is two years for an ordinary violation, and three years for a willful violation. 29 U.S.C. § 255. A willful violation requires an employee to establish that an employer either "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]". McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988). "Reckless disregard 'involves actual knowledge of a legal requirement, and deliberate disregard of the risk that one is in violation.'" Salinas v. Starjem Restaurant Corp., 123 F. Supp. 3d 442, 477 (S.D.N.Y. 2015) (quoting Hart v. Rick's Cabaret Int'l, Inc., 967 F. Supp. 2d 901, 938 (S.D.N.Y. 2013). In McLaughlin, the Supreme Court clarified that if an employer "acts reasonably in determining its legal obligation, its action cannot be deemed willful". 486 U.S. at 135 n.13. The Supreme Court also noted that even "if an employer acts unreasonably . . . in determining its legal obligation", that action still cannot be deemed willful. Id. Mere negligence by an employer is insufficient to amount to a willful violation and only recklessness meets the requisite threshold. See id. at 133.

Here, PHNY did not willfully violate the FLSA because there is no plausible argument that it was unreasonable, let alone reckless, for PHNY to assume that Plaintiff was not its employee and to therefore not pay him for the work function of his treatment. Neither OASAS nor the DOL considered Plaintiff to be an employee, Vaughn I at 3, 5, and existing legal precedent holds that the FLSA does not apply to court-mandated programs that serve as an alternative to incarceration. Doyle, 91 F. Supp. 3d at 488; see supra at I(B)(ii). The Court in Doyle observed that the likely reason no express exception for such programs exists in the FLSA

17

was that "the idea was too outlandish to occur to anyone when the legislation was under consideration by Congress". Id. Indeed, the Second Circuit's remand for this Court to "consider" the implications of Glatt on Plaintiff's FLSA claim makes clear this is — at best for Plaintiff — an open question. For all these reasons, the two-year statute of limitations applies.

The two-year statute of limitations is measured from the latest-occurring allegation of Plaintiff's injury. See Lee v. ABC Carpet & Home, 236 F.R.D. 193, 199 (S.D.N.Y. 2006). Plaintiff identifies the work requirements as the injuries that form the basis of his action, which he concedes he became aware of during the 30-day orientation period of his stay at PHNY. (Am. Compl. at 8, 13-15.) In his TAC, Plaintiff alleges that he was a patient at PHNY between July 28, 2009 until October 2010 and February 2011 until January 2012. (TAC ¶ 10.) Even assuming that the continuing violation doctrine applied such that these visits constituted one sustained injury,[7] Plaintiff's claim should be time-barred because the original complaint was filed on May 12, 2014, which is more than two years after the end of Plaintiff's final stay at PHNY in January 2012. Plaintiff was aware of his alleged injury as early as July or August 2009 and thus does not benefit from the discovery rule to toll the statute of limitations. Moreover, Plaintiff does not allege that he conducted any work after his release in January 2012. Thus, Plaintiff's cause of action is barred by the two-year statute of limitations.

---

[7] As further described in Defendant's Motion to Dismiss the Amended Complaint (Dkt. 32,) the continuing-violation doctrine is inapplicable because Plaintiff has alleged two separate injuries — the first from his treatment at PHNY facilities from August 2009 to October 2010 ("Injury 1") and the second from his treatment at PHNY facilities from February 2011 to January 2012 ("Injury 2"). Thus, even if a three-year statute of limitations is applied, Plaintiff's allegations related to Injury 1 are time-barred.

III.  THE ADDITION OF PHOENIX HOUSE FOUNDATION AS A DEFENDANT IS
      TIME-BARRED

This Court should reject Plaintiff's attempt to add Phoenix House Foundation as a Defendant because it also is untimely.  The addition of a party pursuant to Rule 19 or Rule 21 of the Federal Rules of Civil Procedure is not immune from statutes of limitations.  Thompson v. Dolgencorp, LLC, 304 F.R.D. 641, 642-43 (E.D. Okla. 2015); see also McBride v. Routh, 189 F.R.D. 48, 50 (D. Conn. 1999).  Because Plaintiff did not name PHF as a defendant until October 27, 2015 (SAC at 1), which was more than three years after Plaintiff's release from PHNY in January 2012, the two-year statute of limitations had passed thus barring the addition of PHF as a party to this cause of action.

In addition, the relation-back doctrine does not save Plaintiff's late addition of PHF to this matter.  First, "[b]y its express language, the relation-back language of Rule 15(c)(1)(C) applies to an amendment that 'changes' a named party due to a mistake concerning the proper party's identity, not to a situation where an entirely new party is being added".  Briggs v. County of Monroe, 215 F. Supp. 3d 213, 217 (W.D.N.Y. 2016).  Here, Plaintiff attempts to do the latter to which Rule 15(c)(1)(C) does not apply.  Moreover, "even if [Plaintiff] was unaware that [the newly added defendant] could be sued, . . . relation back still would be inappropriate because [Plaintiff] never named an improper party to begin with."  Fischer v. Forrest, Nos. 14 Civ. 1304 (PAE) (AJP), 14 Civ. 1307 (PAE) (AJP), 2017 WL 128705, at *10 (S.D.N.Y. Jan. 13, 2017).  Plaintiff has made no showing that the failure to add PHF was a mistake rather than an after-the-fact addition to increase the number of potentially liable parties.  See Merryman v. J.P. Morgan Chase Bank, NA, 319 F.R.D. 468, 472–73 (S.D.N.Y. 2017) (noting that Rule 15(c)

19

requires that "there was a mistake that caused the party to be omitted from the original complaint").[8]

Second, Plaintiff separately fails to meet the conditions necessary for the relation-back doctrine to apply because he did not serve a summons on PHF within the statute of limitations period as required by Rule 4(m) of the FRCP, and PHF had no reason to think it should have been a party to the suit given that PHNY was properly named and it was entirely reasonable that Plaintiff sought relief from only that party.  See Fed. R. Civ. P. 15(c)(1)(C); Neal v. Wilson, 239 F. Supp. 3d 755, 760 (S.D.N.Y. 2017).

## IV.   PLAINTIFF'S STATE LAW CLAIMS SHOULD ALSO BE DISMISSED

Because Plaintiff's federal claims cannot stand, the Court should decline to exercise supplemental jurisdiction over the remaining state labor law claims.  See, e.g., Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) (noting Supreme Court guidance that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims", and that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties") (internal quotation marks and citations omitted); Castellano v. Bd. of Tr. of Police Officers' Variable Supplements Fund, 937 F.2d 752, 758 (2d Cir. 1991) ("[I]f the federal claims are dismissed before trial . . . the state claims should be dismissed as well.") (internal quotations and citation omitted).

---

[8] Rule 15(c)(1)(A), which permits relation back under state law — here, New York — is similarly unavailable.  New York law has similar limitations to Rule 15(c)(1)(C) in that it requires a mistaken identity be identified in the complaint to put the proper party on notice or that a party show that the proper party should have known that it was the intended party to the lawsuit.  See Neal v. Wilson, 239 F. Supp. 3d 755, 760-61 (S.D.N.Y. 2017) (citing N.Y.C.P.L.R. § 1024, 203).  As shown above, Plaintiff has not satisfied either requirement.

To the extent the Court does address Plaintiff's state law claims, those claims are deficient for all the same reasons as his federal claims.  The definition of "employee" in the New York Labor Laws ("NYLL") is very similar to that contained in the FLSA.  Compare 29 U.S.C. § 203(e)(1) (defining "employee" as an "individual employed by an employer") and § 203(g) (defining "employ" as "to suffer or permit to work"), with 12 N.Y.C.R.R. § 142-2.14(a) (defining "employee" as "any individual employed, suffered or permitted to work by an employer").  Since the two statutes use "nearly identical terms," the Second Circuit has "construe[d] the NYLL definition as the same in substance as the definition in the FLSA".  Glatt at 534 (internal citations omitted).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiff's TAC with prejudice.


July 9, 2018

CRAVATH, SWAINE & MOORE LLP

by _____ /s/ Rachel G. Skaistis _____
              Rachel G. Skaistis
              Marie Davies Howick

825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Attorneys for Defendants Phoenix House Foundation, Inc. and Phoenix Houses of New York, Inc.*